Good morning. My name is Vicki Morolf-Buchanan. I'm here on behalf of Mr. Gregoire. I'll reserve a couple of minutes. Why don't you move there? This? Yeah. Is this better? Thank you. Okay. This is an unusual case because the government and the appellant agree that there was an error in regard to the substitution hearing. Right. So the question is, what's the remedy? Exactly. And doesn't Muse tell us that the remedy is to send it back to the trial court to conduct the inquiry it never conducted? Muse does, but the circumstances are entirely different than Muse because here we've got the circumstances where Mr. Gregoire went ahead and chose to represent himself, which is much more closely to Callahan. The Callahan circumstances, all that's a hideous case. But it's only if we could make time move backwards. If the judge had conducted an inquiry and denied the motion, we would then have a record by which to determine whether or not it was correct or incorrect. If it was correct to deny it, then there's no error in Mr. Gregoire representing himself. If it was incorrect to deny it, then I think the government concedes he's probably entitled to a new trial. So the question is, why don't we just go back and figure out what the facts were? Well, in this case, first of all, I still don't think you can go back and figure out the facts when Callahan specifically says that you have a, when someone chooses to represent themselves, when the court does not inquire into the situation that it's prejudice per se, they said it's a unique circumstance. Was that an appointed counsel case or a retained counsel case? I don't recall. It was a habeas case. I think it was a retained counsel case. And there is an absolute right to retain counsel of your choice. There's not an absolute right to have appointed counsel do what you want. So if you, the question is, and in habeas, of course, we can send it back to the trial court to retry it. Although I think in one of our habeas cases, we send it back to the district court to have an evidentiary hearing about it. Must have been before the Supreme Court stopped us from doing that. But, again, Mews seems to be pretty closely on point. It's appointed counsel. The judge doesn't do what he should have done. And we go take it back and say, judge, do what you should have done. Then we'll have a record and we'll determine whether or not you were right or wrong. But what else do you want? Yeah, why doesn't that help you? Yeah, that's a good deal for you. To go back and to the same district court judge and have him, he's already decided what he needs to decide if he goes back. You want to send it to another judge? Absolutely. But you didn't ask for that in your briefs. That's true. That's an extraordinary remedy that generally you would have to ask for. But, you know, I guess you haven't either proffered anything. You know, just I think anyone that's had experience in the trial court, which I had substantial both as a lawyer and as a judge, you know, there are actually just saying the magic words that, you know, I can't get along with my lawyer. My lawyer's not doing what I say and all of that. There are actually, and I know this wouldn't probably surprise you, there are some defendants that don't like their lawyers because their lawyers won't do everything that they say. And lawyers do have a right to make determinations about motions that they file. And there are defendants that are obstreperous, and then they will say things like, well, then I'm going to represent myself if you won't let me have, and, you know, I agree that a judge needs to get into that. But your client could fall, there's still been no proffer other than that he just says, you know, you haven't said, hey, the lawyer never came and visited me. The lawyer, you know, wouldn't, you know, I wanted to testify, and the lawyer told me that I couldn't. It's just like, hey, you know, they're irreconcilable differences, and we're supposed to assume from that that that would allow a defendant to run the court proceedings. And there are defendants that actually do want to, you know, run the court proceedings, and they're not happy with anything. I totally agree with you. I've read a lot of records. I've seen a lot of these confidential hearings, and that's the whole point of a confidential hearing, is to get to what it is and to ferret out whether it is just a. But we still have no. But he needs a hearing to have that. He can't say that in front of the other. Okay, but if we ordered to go back and tell the judge why, you know, what was the breakdown? I agree with you. Your client, and the government agrees with you. Your client was deprived of a procedural right to tell the judge what the problem was so the judge could determine whether or not it justified firing counsel or not. Because he wanted replacement counsel, obviously, and he didn't get it. So the question is, I'm still back to the first question. Why not get a record on that? The judge may screw it up. And you'll be back up here, and we'll be able to look at that record. But you'll be able to make a proffer to the judge. Your client will be able to say, here's the reason why I couldn't get along. If the judge, as you suggest, is biased against you, well, then we'll be able to look at that record and determine whether or not the judge should have granted it. That's a lecture, but it's a question, too. Why isn't that an appropriate remedy? Because we don't know what would have happened if he had continued like in Musa with his attorney. In that case, you know what happened. You know that there was a trial. You know that something happened. And then you can look at the trial record to say, okay, there was a conflict of interest here. But the attorney actually worked, performed, and there was no conflict of interest. Well, but you're trying to tie this into the fact that you're trying to make it a structural error. And that, therefore, I mean, he has this separate Ferretta hearing, which we're not looking at as being defective here. The court isn't required to give you an arrow in the quiver. If you don't get what you want, then you can just say, well, then I'm going to represent myself. And even though you go through all the things on Ferretta, that, therefore, then the Ferretta is invalid and woulda, coulda, shoulda, all of that. The issue was, was there a breakdown? Well, if you ask Judge Reel to take another look at this case. I'm sorry? Well, if Judge Reel took another look at this case, I don't know what he would find from the conflict of interest. He's already decided. But I just asked you, did you ask Judge Reel to take another look at this? I did not, no. Okay. I mean, there was no motion made. No, I just asked you a question. You can just say that. No. I did, yeah. But your position, I take it, is that it became structural error because he didn't make the appropriate inquiry. No. He didn't make the appropriate inquiry. It became structural error when Mr. Grigoire represented himself. And as the government concedes, he had ineffective counsel at that point in time. But my question is, what case do you think stands for the proposition that it's structural error? We have MUSE, which is a direct appeal, in which Judge Fischer writes an opinion that says, go back and, to Judge Reel, actually, go back in this case and hold another hearing and determine what the real facts were, and then we'll review it. What's your best case? Callahan. Callahan's your best case? Yes, it is. Okay. And am I your best judge, too? And your best judge. And the best judge, exactly. And Shell, in that it also affirms that portion of Callahan. Yeah. Shell's different, though, because it's a habeas, and I don't know what we can tell the state court to do in a habeas other than retry it. So on direct appeal, what's your best case? On direct appeal. See, we're restricted in habeas cases to what we can do. Right. So it's hard. No, I agree. I agree on direct appeal. And if we didn't have the circumstances as in Callahan, then. The great writ is the great joke. Why don't you save some time? Well, I think. Oh, thank you very much. Thanks. Good morning, and may it please the Court. Mark Yohalam for the United States. I want to start by arguing against my opponent and then argue against myself for a moment as well. Well, it is a little bit of a house of cards. You know, when this whole thing starts out, and even just to send it back, it's a little bit hard to decide how this infects the entire thing because this defendant, just on the record, looks like he falls into the category of being a little bit obstreperous, and when he doesn't get what he wants, and there's certain timing issues, but the judge didn't really do what he needed to do. He didn't, you know, so he's not without some support for his position, and then he decides, well, if you're not going to do what I say, then I'm representing myself. Sure. So there's absolutely an error. This was a completely inadequate inquiry. Obviously, the government is frustrated by that situation. Well, and I appreciate your candor in conceding it. Did the government try to get Judge Rehl to do something at that point? The government did not oppose the motion for reconsideration filed by the defendant. The government didn't oppose the motion for the in-camera hearing. Yeah, but you also, if you're trying to protect the proceedings, as the government, you can get up and you can say, Judge, you know, we really need to know more about this because we don't want to, you know, we just don't want to go forward if there really is a conflict. Well, you knew that before Judge Rehl, whatever you did was a waste of time, right? I am reluctant to criticize a fellow member of the bench, but you're right that Musa was a case from Judge Rehl probably once a month. My appellate section is conceding a case from Judge Rehl's courtroom, so yes. There are some challenges in that courtroom, but I think in this case, the government was unaware of what was in the in-camera declaration about the conflict, and so at least from the government's perspective, it was possible, and I wasn't the trial lawyer on this case. So it was possible that there could have been a basis for him to rule because you don't know what you don't know. Exactly. The in-camera declaration could have simply said, my lawyer won't bring me donuts, I want new ones. Well, and it really doesn't matter what the declaration says in the sense that you've conceded this point, so I don't want to take too long on it. Musa says the purpose of the inquiry is you're dealing with a client who's just saying stuff. The judge needs to go further and say to him, okay, what's the nature of the conflict? And so even if no matter what the declaration said, an inquiry would have been required, correct? I don't think that's required, and I don't want to distract you. Yeah, but you've conceded this point. Yeah, in this case, no. So tell us why the appropriate remedy, and I'm mindful of what Judge Braggerson said before. How long did this trial take? It was a very short trial. Yeah, so the question is, do we go back and have a one-day hearing on the nature of conflict with counsel, or do you retry the guy in one day and get a clean conviction? Because I've got to say, there doesn't seem to be any good defense in this case. Yeah, so... Send it to some other judge. The government can't recommend that without the Solicitor General's approval, which, because the issue was not presented by the defendant, we don't have a position on it. So let me try to... Yeah, I looked at the nature of the defense put on by counsel and the nature of the defense put on by pro se is pretty weak. We could, on our own motion, send it to another judge. Yes. All right. So I want to address the remedy question, which I believe my opponent has misstated the case name. It's not Callahan, it's Crandall. Right. And I think actually Crandall... But she was taken, as we all are, by Judge Callahan's presence. And I actually think Crandall does exactly the opposite of what the defendant wants it to do. Crandall was actually a comeback appeal. There was a prior Crandall appeal, and in the prior Crandall appeal, what the court did was, and I quote from the second Crandall case, we previously remanded to the district court for an evidentiary hearing on whether Crandall's attorney was competent at the time Crandall chose to refuse further representation and proceed pro se. It was only after the district court, in an evidentiary hearing, determined that Crandall's counsel was incompetent that this court held that it was a reversible error to force him to choose between incompetent counsel and going pro se. Here, there's no question that the public defenders on this case were competent. I know them. Chris Dubois is now the number two at that public defender's office. Nassau Akonzadeh is a great lawyer. The only question is whether there was a breakdown in communication, and as the record stands now, this court could not find that. I think Judge Callahan is absolutely right. The record, I don't think the court can find one way or another, and I'm not asking the court to, but I think what the record looks like right now is that the defendant was one of those crazy tax protesters who believes he has a valid subject matter defense to any criminal prosecution as long as he challenges the jurisdiction of the court to hear his case. And there's not a lot in the record of this, but, for example, he signs this declaration, quote, without prejudice, and that's one of these tales of these tax protesters. And the merits are, I guess if it's structural error, the merits are unimportant, and if we don't have a record, we still can't decide it. But this led me to Judge Perkerson's question, which is that we're up here fighting. Everybody agrees we send it back. The other side says you should get a new trial. You say we should have a hearing. The case law seems to be on your side, but we're now four months, five months, six months a year after the case, and you could have just retried the guy in 15 minutes, I think. I completely agree. Your Honor, we moved for summary reversal and remand, and the court denied that. And some of it's our fault. That said, I'm an appellate lawyer, and procedures matter a lot to me. This court has a procedure that Moussa held and that Alamos and Gonzalez, which are unpublished decisions, have reiterated. And I think Alamos is pretty telling. So Alamos, Your Honor may recall, you were on the panel, Judge Perkerson, initially the court said it had to go back for retrial. The government moved for rehearing, and after rehearing, the court said, no, no, no, it goes back for an evidentiary hearing. And quite frankly, I don't know that sending it back for a new trial in front of Judge Reel is going to be the end of the story. I think it's actually fairly surprising that in a post-trial case, the only claims on appeal relate to the denial of counsel and that we aren't having challenges to evidentiary rulings or other potential claims. Every time you do a trial, errors have a way of showing up. And I suspect that if we go back for a new trial, there will be a new appeal challenging something else about the trial, and there will be a two-year process of resolving that appeal. Whereas if it goes back for an evidentiary hearing, potentially we will win at that evidentiary hearing. It could go back up to this panel to then rule on that if necessary. But the trial, at least, will be done and over with, and the only thing that will really be left to do is to fix this recidivism. And by the way, I didn't mean to suggest any criticism of the government. I'm delighted that we have a case in which there's a concession of error. We've often berated people for not conceding error, so I praise you for doing it. Do you think they should have made some sort of offer of proof here about what the irreconcilable difference, or because that is handled in camera, they're not required to do that? At what stage, Your Honor? Like here? No, I don't think so, Your Honor. I mean, look, I... That's the purpose of the inquiry, is it not? Yeah, I mean, I think they have the... Although this is an extremely thin declaration from the defendant that reads like it was dictated to him by a jailhouse lawyer, he does at least say that there's an irreconcilable conflict. He uses the buzzwords that trigger a hearing. That's enough that there should be a hearing. And these things, sometimes there are irreconcilable differences even when you have great public defenders, personalities clash. I think in all likelihood, if there were the hearing, if this Court does what we think it should do, and it goes back to an evidentiary hearing, there will turn out to be no irreconcilable conflict, and the trial will stick. I mean, the other thing I would just... Well, to be clear, not liking your lawyer doesn't satisfy that. I mean, the defendant would have to show that he was entitled to certain things that his lawyer absolutely... And filing motions that the flag, whether it has fringe or not, or things like that, might be things that a lawyer would say, well, I can't file that because it has no merit. And if you want a lawyer, your lawyer is going to file things that I get to control the legal part of this. Absolutely, Your Honor. But then on the other hand, maybe he didn't ever go visit him at the jail. Maybe he never prepared, or maybe he told him, I'm not going to let you testify. It's possible. I mean, it's not possible knowing these lawyers. But on this record, that argument could be made. We're speculating. The only other thing I would just say, and I said I wanted to argue against myself for a moment, which is just part of the point of these hearings is for the district court judge to calm the defendant down. And I don't think it would have made a difference in this case because we then do have a well-done, phoretic hearing that the government was able to assist with, and we had a defendant who looks like he's an obstreperous tax protester. But at least sometimes a defendant thinks he's having a reconcilable breakdown because he's saying, I want to file this motion. The lawyer won't, and he thinks, I'm the client. I should be the one to make a decision. It's my liberty that's at stake. And it's actually helpful to come in before the district court judge and have the district court judge act like a psychotherapist and say, you know, no, respectfully, that's your lawyer's job, and basically give something like a mini-phoretic admonition to try to heal that relationship. And I don't think that would have made a difference in this case, but I would just note that that's an additional wrinkle here that I think is really the best argument that defense counsel has, which is that it is possible, theoretically, that if the hearing had been held, it could have cured a disagreement that didn't rise to the level of a reconcilable breakdown. Well, if we don't remand it for a hearing on this, are we saying it's structural error? And is that – I mean, structural error is a big deal. There are very few structural errors. Well, it's not structural error. Well, no, but would that be tantamount to? So obviously the denial of counsel is structural error. I think what – But the denial of your choice of counsel, if you're not retaining them, is not structural error. Correct. So it's structural error if someone has an irreconcilable breakdown and you say your choices are to stay with the lawyer you can't communicate with or to represent yourself pro se. That is a structural error. But it's not structural error if somebody doesn't have a good reason and wants to change lawyers and the judge says no. Correct. So you're not entitled to a lawyer of your choice unless you're retaining him. Correct. If you've got an irreconcilable conflict and are forced to represent yourself, that's structural error. So we need to figure out whether there was an irreconcilable conflict or not. And we don't have no record. That's why we're here. Yeah, I don't argue against myself that much. I mean, I think there are – You're not really arguing against yourself. Like Adelza Gonzalez, the court held that the court just reversed the conviction. And it did that even though there wasn't an adequate hearing. The court didn't send it back for a new hearing. But the reason it did that was because the record was good enough for this court to conclude that there was a true irreconcilable conflict. So that's how we distinguish Adelza Gonzalez from your perspective. So in Adelza Gonzalez, the lawyer was abusive to his client, called his client a liar in front of the judge. There's nothing like that here. I mean, look, I don't think – I think the court could send it back for a new trial without finding structural error simply by saying that there was an abuse of discretion. That abuse of discretion led to the defendant representing himself pro se. Forcing the defendant to represent himself pro se through the court's error is reversible error or something like that. But that just isn't what should happen. Moussa has made clear what should happen. What should happen is an evidentiary hearing. Hopefully the district court will do that hearing properly, and that will be the end of it. I think you don't need to argue against yourself anymore. You have an opponent. But I was going to ask, are we clear that in Adelza Gonzalez a new trial was granted? All I see at the end of Adelza Gonzalez is the conviction is vacated, and it's remanded for proceedings consistent with this opinion. I don't really know that a new trial was granted in that case. There's some asymmetry because I don't have an iPad in front of me. I mean, my strong recollection of the case is that it was – Well, we're always better off than you are. Let me tell you something. You're the second U.S. attorney in my almost 50 years on this court that has stood before me with total frankness and honesty. And the first guy is a law professor today. And I see him. I admire him. I wish we had him on this court. And so I admire what you're doing. I respect what you're doing. And we have to look at the reality of who we're dealing with. The judge here is not very kind, doesn't try to maintain some rapport with the defendants. It doesn't work that way. And I'll tell you, see, I'm getting old, and I don't give a damn what I say anymore. But many, many years ago, when we had draft cases, going back into the 60s, you had a group of protesters. They would show up with pirate clothing, you know. And so one of the lieutenants had a case before my brother that we're talking about. And they had marshals out there. They had magnetometers out there. The trial lasted a month. And I got the head guy about a month later. And I told the marshals, I don't want any magnetometers out there. I don't want any guards out there. Just leave me alone. And we had the trial, and they were there in costumes. And they were in proper. And we started at 9 o'clock. By 11 o'clock, they put on their witnesses. McIntyre was the U.S. attorney. He put his case on in about three minutes. All you got to do is put the file in there. They argued the case. The jury went out. By 11 o'clock, there was a conviction. And then when I sentenced the defendant, three weeks later, I mean, this is hard to believe, but all his cohorts gave me a standing ovation. This is true. And I get asked year after year, because that group's still together, they want me to be the keynote speaker. At their reunion. Maybe I'll do it this time. You know, they were sort of, you know, if you were in a battle, you wouldn't want them there. Oh, it's sad the way things get done sometimes. And we try to figure out some way that people, regardless of who they are and what their complaint with the government is, at least feel that they've been treated fairly. That's the most important thing. I thank you for what you've done. And if I could ever write a good letter of recommendation as to your character, I'll be glad to do it. This is really the point where you say thank you, Your Honor. Thank you very much. You're one of two in all those years. Thank you, Your Honor. Good for you. Well, not so that you feel left out. Come back and do your rebuttal. Oh, no, you won't. And Judge Pregerson, who has never hesitated to speak his mind, has seen many appointed counsel that he thinks did a terrific job. You're one of them. I appreciated both U.S. attorneys on this case. Both have been very helpful. Yeah, but don't snatch defeat from the jaws of victory. No, I was just going to say that I remember the Crandall is the case, and I'm sorry I got the wrong name on that case. Also, it's just a shame that on the day of the hearing in this case, the day of trial, instead of the judge arguing with Mr. Giroir as to why he was representing himself, if he'd have only taken five minutes to go into chambers and explore this, we wouldn't be here. Yeah, we all agree as to that. And also, I want to just not have it left out, but we do have the restitution issue. So if this case does go back, this court needs to let the court know that the restitution is in progress. I think they've conceded that as well. Government's conceded that as well. As far as the judge is concerned, I like him. I've known him a long time. He's a good friend. He gets mad at me when I reverse him, but that's the way it is. But he's still an active judge. I'm going to take senior status tomorrow. And I keep asking him, why don't you take senior status so I can be the oldest. Well, I am older than he is. That's the problem. About six months. But no, he's still working full time. Anyway, God bless America. Thank you. Okay, thank you. All right, now, let's see, where are we now?
judges: Pregerson, Callahan, Hurwitz